### UNITED STATES v. FOYE TIE CO.

(District Court, S. D. Florida. July 9, 1924.)

No. 1704.

Shipping ⬤=184—Libel for demurrage held sufficient.

    A libel against a charterer for demurrage, which sets out the provisions of the charter party, the amount of cargo, and the times when loading and discharging commenced and ended, and alleged generally that respondent failed to deliver and receive the cargo at the rate provided for in the charter, *held* not subject to exception, because it did not specifically negative compliance with particular requirements of the charter.

In Admiralty. Suit by the United States against the Foye Tie Company. On exceptions to libel. Overruled.

Wm. M. Gober, U. S. Atty., of Tampa, Fla., and Maynard Ramsey, Asst. U. S. Atty., of Jacksonville, Fla.

Fred B. Noble, of Jacksonville, Fla., for defendant.

CALL, District Judge. This cause comes on for hearing upon exceptions to the libel filed herein. The libel, in so far as it is necessary to the decision of the question here made, may be shortly stated as follows:

After setting out the fact that the vessel was chartered to the respondent to carry a cargo of yellow pine cross-ties, at a stated freightage, from Jacksonville, Fla., to New York City, and making the charter party a part of the libel, quotes certain portions of the charter, to wit:

"That the agents agree on the freighting and chartering of the whole of said steamer (with the exception of the deck, cabin, and necessary room for the crew and storage of provisions, sails, cables, and fuel), or sufficient room for the cargo hereinafter mentioned, unto the Merchanta, for a voyage from Jacksonville, Fla., to New York, N. Y., or as near thereunto as she can proceed, and there deliver her cargo, always afloat with safety, on the terms following: The said steamer shall be tight, staunch, strong, and in every way fitted for such a voyage, and receive on board during the aforesaid voyage the merchandise hereinafter mentioned, and no goods or merchandise shall be laden on board otherwise than from the said merchants or agents."

"50¢ per standard tie, 7x9x8'6", and pro rata other size ties if shipped. Merchants are also to pay vessel's wharfage if any, at loading and discharging ports."

"It is agreed that the lay days for loading and discharging shall be as follows, if not sooner dispatched: Commencing from the time that the cap-

⬤=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tain reports his steamer ready to receive or discharge cargo, and custom house formalities are fulfilled."

"Delivery to be within reach of ship's tackles, to be as fast as vessel can receive, and not less than 5,000 ties per day. Discharging to be made as fast as vessel can deliver, from ship's tackles, and not less than 5,000 ties per day. Holidays, Sundays and rainy days excepted."

"Demurrage to be on the basis of $650 per day or pro rata part thereof."

"The steamer to have an absolute lien on cargo for freight, dead freight and demurrage."

"The cargo or cargoes to be received and delivered alongside of the steamer, where she can load and discharge, always safely afloat, within reach of her tackles; and lighterage, and also extra lighterage. if any, necessary to enable steamer to reach discharging place, to be at the risk and expense of the cargo."

"Lay days reversible."

It is then alleged that the respondent was notified at 12 o'clock noon of the 5th day of July that the vessel was ready to receive cargo; that 30,950 cross-ties were loaded; that the loading of said cross-ties commenced about 2:30 p. m. of July 6th, and was completed about 6 p. m. of July 14th; that under the charter the time for loading said cross-ties was 6 days, 1 hour and 55 minutes, and the time consumed in loading over and above this period was 1 day, 3 hours and 50 minutes. It is then alleged that the vessel arrived at the port of New York at or about 4:45 p. m. July 18th, and that respondent was notified at 12 noon of July 18th that the vessel was ready to deliver said cargo; that the vessel discharged said cargo of ties at New York, commencing at about 8:30 a. m. of July 19th, and completing same at 2:30 p. m. July 26th. Demurrage is claimed for 2 days, 5 hours and 48 minutes.

The twelfth article of the libel then proceeds to allege that respondent failed to deliver and receive the cargo at the rate provided for in the charter.

The exceptions challenge the libel because it is not specifically alleged that the respondent did not make delivery of cargo within reach of the ship's tackles as fast as the vessel could receive, not less than 5,000 cross-ties per day; that respondent did not receive at port of unloading as fast as the vessel could deliver from her tackles, not less than the above amount; that it is not alleged that the respondent was in default.

The twelfth article of the libel, while general in its allegations, seems to meet the contentions in the exceptions.

Said exceptions, and each of them, will therefore be overruled.